UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BENJAMIN BAKER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | No. 1:23-cv-00664-JMS-KMB |
| | ) | |
| DWD COMPANY, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

## <u>ORDER</u>

Plaintiff Benjamin Baker worked as a truck driver for Defendant DWD Company, LLC ("<u>DWD</u>") from April 2020 until his involuntary termination in June 2022.  During his employment, Mr. Baker had met with DWD payroll department employees about his belief that he was not getting paid for all of the hours that he worked.  Mr. Baker had also involved his union steward and sought to file a grievance against DWD for failing to pay all the hours worked each week, including overtime.  DWD learned of Mr. Baker's proposed grievance.  Shortly thereafter, Mr. Baker received a write up from DWD that he was "causing trouble" and "stirring things up." [Filing No. 42 at 7.]  He also later received a write-up for recording time on his timesheet for cleaning out the bed and cab of his dump truck.  Mr. Baker was later terminated "for refusing to use his personal cell phone for [DWD's] business without compensation."  [Filing No. 42 at 8.] After he was terminated, Mr. Baker sued DWD, asserting four claims: (1) failure to properly pay overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("<u>FLSA</u>"); (2) failure to pay all wages due and owing during employment pursuant to Indiana's Wage Payment statute, Indiana Code § 22-2-5, *et seq.*; (3) failure to pay all wages due and owing following involuntary separation of employment pursuant to pursuant to Indiana's Wage Claims statute,

1

Indiana Code § 22-2-9, *et seq.*; and (4) retaliation under the FLSA.  [Filing No. 42.]  DWD has filed a partial Motion to Dismiss, requesting that the Court dismiss both state law claims.  [Filing No. 46.]  The motion is now ripe for the Court's consideration.

## I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief.  The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## II.
### BACKGROUND

The following are the factual allegations set forth in the Third Amended Complaint—the operative complaint in this case—which the Court must accept as true at this time.  The Court only provides facts relevant to the state law claims at issue.

In April 2020, Mr. Baker began working for DWD as a truck driver.  [Filing No. 42 at 2.] He was paid on an hourly basis.  [Filing No. 42 at 2.]  Mr. Baker was not paid for the following:

- Time spent performing his pre-driving inspection of his truck;

- Time spent fueling his truck;

- Time spent performing his post-drive inspection of his truck;

- All of the time spent driving his truck from the company yard to the location of a supplier;

- All of the time spent driving his truck from the supply location to the work site; and

- All of the time spent driving his truck from the work site back to the company yard at the end of the workday.

[Filing No. 42 at 2.]  Depending on the week, the unpaid work time constituted either regular or overtime hours.  [Filing No. 42 at 2.]  There were at least twelve weeks during Mr. Baker's employment where he worked over forty hours but was not paid accordingly.  [Filing No. 42 at 2-3.]  Mr. Baker was terminated by DWD in June 2022.  [Filing No. 42 at 3.]

Mr. Baker initiated this litigation on April 17, 2023, and sets forth claims for: (1) the failure to pay overtime wages in violation of the FLSA; (2) the failure to pay all wages during employment in violation of the Indiana's Wage Payment statute; (3) the failure to pay all wages following involuntary separation from employment in violation of the Indiana's Wage Claims statute; and

(4) retaliation in violation of the FLSA.  [Filing No. 42.]  DWD has moved to dismiss the Indiana claims.  [Filing No. 46.]

### III.
#### DISCUSSION

In support of its motion, DWD argues that: (1) both Indiana claims must be dismissed because there are two collective bargaining agreements ("CBAs") between Mr. Baker and DWD that preempt the claims; and (2) the Indiana Wage Payment claim must be dismissed because, as a terminated employee, Mr. Baker is required to bring all state law claims for unpaid wages under the Wage Claims statute.  [Filing No. 47 at 5.]  The Court addresses the arguments in turn.

### A.  Preemption

DWD argues that Mr. Baker's state law claims "are directly founded" on the CBAs and are therefore preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  [Filing No. 47 at 6-8.]  It argues that since Mr. Baker claims that he was not paid for all of the time he spent driving his truck to and from the company yard to the supplier and worksite, the Court "will unquestionably have to interpret the [CBAs] to determine if they lay out the applicable pay rates for travel time, and if they do not, how travel time should be paid, if at all."  [Filing No. 47 at 9.]  It also argues that the Court will have to interpret the CBAs to determine how overtime is handled because the CBAs pay more favorable overtime than federal law.  [Filing No. 47 at 10.]  Because the Court would "have to undertake a thorough analysis of the [CBAs]," DWD asserts, the state law claims are preempted.  [Filing No. 47 at 12.]

In response, Mr. Baker argues that his state law claims are not preempted, and that the CBA merely requires referencing, not interpreting.  [Filing No. 51 at 4-5.]  He asserts that the CBAs do not override federal and state law and instead specify an intention to comply with federal and state law, which he argues is what will determine whether the work activities at issue are compensable

4

or not, rather than the CBAs.  [Filing No. 51 at 4-5.]  Mr. Baker clarifies that his state law claim relates to whether "he was paid all of his compensable time as defined by federal law."  [Filing No. 51 at 5.]  He asserts that the Court need only reference (as opposed to interpret) the CBAs.  [Filing No. 51 at 6.]

In reply, DWD reiterates its arguments and asserts that Mr. Baker is ignoring both the "complete preemption effect of a collective bargaining agreement on state law claims" and precedent holding that similar provisions of CBAs require court interpretation and are therefore preempted.  [Filing No. 52 at 2-3 (citations omitted).]  It asserts that the only means of determining whether Mr. Baker is owed compensation is to interpret the CBAs.  [Filing No. 52 at 4.]

Section 301 of the LMRA, 29 U.S.C. § 185(a), "provides that suits for violation of contracts between an employer and a labor organization confer original jurisdiction in federal district courts, [and] has complete preemption force." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498 (7th Cir. 1996) (citation omitted).  "To ensure uniform interpretation of collective bargaining agreements, § 301 requires that federal rules of law be applied." *Id.* (citations omitted).  Even where a plaintiff brings a state law claim, if its resolution "depends on the meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Id.* at 499 (citations omitted).

While the preemptive effect of § 301 is broad, preemption does not occur in every case. *Id.* (citation omitted).  "For instance, § 301 says nothing about the substantive rights a state may provide to its workers when adjudication of those rights does not involve the interpretation of a collective bargaining agreement." *Id.* (citation omitted).  Further "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement."

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396 (1987) (emphasis in original).  "Nothing that [an employer] put[s] in a collective bargaining agreement exempts them from state laws of general application. . . .  Management and labor acting jointly (through a CBA) have no more power to override state substantive law than they have when acting individually."  *Spoerle v. Kraft Foods Glob., Inc.*, 614 F.3d 427, 430 (7th Cir. 2010); *see Mitchell v. JCG Indus.*, 842 F. Supp. 2d 1080, 1086-87 (N.D. Ill. 2012) (finding that, even though plaintiffs were subject to a CBA, plaintiffs could eschew a claim under the CBA and instead assert a state statutory right to compensation).

Indiana's Wage Payment statute provides that employers "shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee."  Ind. Code § 22-2-5-1(a); *see also St. Vincent Hosp. & Health Care Ctr., Inc.*, 766 N.E.2d 699, 704 (Ind. 2002) (noting that the Indiana Wage Payment statute was intended to govern "not only the frequency but also the amount an employer must pay its employee").  Indiana's Wage Claim statute provides that "the unpaid wages or compensation of [a covered] employee shall become due and payable at regular pay day for pay period in which separation occurred."  Ind. Code § 22-2-9-2(a).

In this case, Mr. Baker frames his state law claims as dependent on whether the work activities alleged are "compensable" under the FLSA and asserts that, if so, then he was not paid all of his wages in violation of state law.  [Filing No. 51 at 4-6.]  Therefore, he is not seeking a determination as to the appropriateness of his compensation under the CBA, but instead asserting that he was not compensated in accordance with state laws.  [Filing No. 51 at 4-6.]  In fact, Mr. Baker does not even mention the CBAs in his operative complaint.  [*See* Filing No. 42.]  Put differently, he is asserting statutory rights that are separate from any contractual rights under the CBAs.  The question of whether the state law claims provide the relief Mr. Baker is seeking does

not require interpretation of the CBA nor is the CBA the subject of the dispute.  Rather, the claims as Mr. Baker pleads them are a matter of state law application.

Although the governing CBAs create overtime rights according to DWD, and in fact create more favorable overtime rights than those created by state law or federal law, Mr. Baker has chosen not to enforce those CBA-created rights through this lawsuit.  The Court takes Mr. Baker's claims as he frames them and does not concern itself with the soundness of such a decision:

> [I]t does not matter whether Plaintiffs' decision to forego their CBA rights in this lawsuit is wise or foolish, strategically wise or shortsighted, or consistent or inconsistent with the wishes of their union.  All that matters is that Plaintiffs are content with enforcing their statutory rights and willing to leave their additional CBA rights on the table—certainly for purposes of this case, and perhaps forever if issue preclusion prevents them from later seeking to enforce the CBA for time periods covered by this suit.  The mere existence of those additional CBA rights will not require the court to interpret the CBAs when resolving the [state law wage] claim, and thus do not result in preemption.

*Mitchell*, 842 F. Supp. 2d at 1086 (quoting *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 2011 WL 5122679, at *5 (N.D. Ill. Oct. 28, 2011) (holding that § 301 of the LMRA did not preempt plaintiffs' claim that defendant violated a state minimum-wage law where plaintiffs sought to vindicate only their statutory wage rights, not any additional rights provided by the CBAs)).  While it may potentially be necessary to reference the CBAs to calculate damages, it appears, at least at this juncture, that the Court would only need to reference the CBAs to determine the rate of Mr. Baker's pay (e.g., $10.00/hour) and then multiply that rate by the number of hours of FLSA-compensable work for which he did not receive compensation.  Such reference does not equate to interpretation and preemption.  *Mitchell*, 842 F. Supp. 2d at 1087 ("Reference to [a] CBA for purposes of damages calculation does not support § 301 preemption.") (citing *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008)).

It is well-settled that the law does not require Mr. Baker to pursue his rights under the CBAs. *Rice v. Panchal*, 65 F.3d 637, 639, 646 (7th Cir. 1995) (holding that ERISA does not preempt plaintiff's claim premised solely on state law where plaintiff did not invoke the ERISA plan); *Mitchell*, 842 F. Supp. 2d at 1086 (holding that § 301 of the LMRA did not preempt plaintiff's claim that that defendant violated a state minimum-wage law where plaintiff premised the claim solely on state law and did not invoke any CBA-created rights); *Chavez v. Don Stoltzner Mason Contractor, Inc.*, 2010 WL 1417029, at *2-3 (N.D. Ill. Apr. 5, 2010) ("[S]tate-created labor rights may exist independent of a governing CBA, and a plaintiff may choose to enforce solely those independent state-created rights and forego enforcement of CBA-created rights."). As the "master" of his complaint, Mr. Baker is free to assert his state law claims and forgo claims based on federal law, "[r]egardless of whether th[e] choice serves [him] well." *Mitchell*, 842 F. Supp.2d at 1086 (quoting *Caterpillar Inc.*, 482 U.S. at 395).

To be sure, Mr. Baker's current position forfeits any arguments he might have regarding more beneficial overtime provisions in the CBAs and to the extent he attempts to raise such arguments later in this lawsuit, the Court's preemption analysis would change. *See Mitchell*, 842 F. Supp. 2d at 1087 (noting that plaintiffs were forfeiting all arguments regarding more beneficial overtime provisions in the CBA when solely enforcing their independent state-created rights and foregoing enforcement of CBA-created rights); *Whitmore v. Kraft Foods Global, Inc.*, 798 F. Supp. 2d 917, 925 n.7 (N.D. Ill. June 27, 2011) (noting that the plaintiff repeatedly made clear that his state law wage claim was "not based on the CBA" and reminding him that taking a contrary position going forward would affect preemption).

The cases that DWD relies on in support of its preemption argument are inapposite. In *Atchley*, *Greenslade*, and *Armogida* the plaintiffs brought claims based on the defendants' failure

to either pay wages in accordance with a CBA or properly follow a policy therein and thus the claims were directly founded on the CBAs and preempted by § 301. *Atchley*, 101 F.3d at 500 (plaintiffs claimed that "[d]espite their demands and the requirements of the [CBA]," they did not receive the wage increase they were entitled to under the CBA); *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 868 (7th Cir. 1997) (plaintiff claimed that defendant violated the CBA by not properly following the sexual harassment investigations policy set forth therein); *Armogida v. Jobs With Justice, Inc.*, 2022 WL 4483924, at * 4 (S.D. Ind. Sept. 26, 2022) (plaintiff claimed that "pursuant to the terms of the [CBA], Defendants were required to pay wages and health insurance premiums").  Unlike these cases, Mr. Baker is not bringing his state law claims based on a CBA. The plaintiff in *Armogida* also brought a claim under the Indiana Wage Claim statute for her employer's failure to pay wages that she had earned at the time of separation. *Id.* at *3.  The court found that her claim was preempted by § 301 because whether and to what amount she was entitled to her full annual salary despite early separation would require interpretation of the governing CBA, which did not provide further information on the increments or distribution of her salary. *Id.*  But the payment structure of the plaintiff's wages in *Armogida* is different than Mr. Baker's, who was an hourly employee, paid at a specific rate based on the hours he worked.  [*See* Filing No. 42 at 2-3.]  Thus, *Armogida* is not analogous to this case, where the Court need only reference Mr. Baker's rate to calculate damages, not interpret the CBAs to determine increments or distribution.

In sum, Mr. Baker has made clear to the Court that the relief he seeks is solely under state wage laws and that reference to, but not interpretation of, the CBAs, is all that would be required should he succeed on the merits.  Therefore, § 301 of the LMRA does not preempt Mr. Baker's claims.

### B.  Applicability of the Wage Payment Statute and the Wage Claims Statute

DWD argues that Mr. Baker's Wage Payment claim must be dismissed because the Wage Payment statute applies only "to employees seeking unpaid wages who voluntarily leave their employment or who remain employed and whose wages are overdue." [Filing No. 47 at 14 (citation omitted).]  DWD asserts that both Indiana courts and federal courts within the Seventh Circuit have "routinely and consistently reject[ed] the argument that the Wage Payment [s]tatute applies to individuals who were terminated from their employment." [Filing No. 47 at 15 (citations omitted).]  And since Mr. Baker has admitted that he was involuntarily terminated by DWD, it asserts that this claim must be dismissed, and any wage claims must be analyzed under the Wage Claims statute.  [Filing No. 47 at 15-16.]

In response, Mr. Baker argues that the Wage Payment statute applies to his wage claims that accrued while he was employed and that the Wage Claims statute applies to his wage claims that arose after his termination—a bifurcated approach.  [Filing No. 51 at 7-13.]  He acknowledges that the Indiana Supreme Court addressed this issue in *St. Vincent Hospital & Health Care Center, Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2022), but argues that the issue was addressed "in *dicta* without any in-depth legal analysis," and therefore requires a fresh analysis.  [Filing No. 51 at 7-8 (emphasis in original).]  He also acknowledges that the Seventh Circuit in *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487 (7th Cir. 2011), answered the same question, relying on the Indiana Supreme Court's guidance.  Nevertheless, he asserts that this is an important legal issue that requires more analysis.  [Filing No. 51 at 8-11.]

In reply, DWD reiterates that the law is clear that the Wage Payment statute does not apply to Mr. Baker, and that he can only bring his wage disputes under the Wage Claims statute.  [Filing No. 52 at 5-9.]

When applying state law, this Court's job "is to apply the state law as we predict the state supreme court would." *Treat*, 646 F.3d at 490. The statutes at issue—the Wage Payment statute and the Wage Claims statute—provide the same remedy for similar wrongs related to unpaid wages but require distinct procedural steps before a remedy may be granted. *Compare* Ind. Code § 22-2-5-2 (listing the damages available for a violation of the Wage Payment statute and providing that a claimant can recover in "any court having jurisdiction"), *with* Ind. Code § 22-2-9-4 (stating that "[t]he provisions of IC 22-2-5-2 [the statute listing the remedies for a violation of the Wage Payment statute] apply to civil actions initiated under [the Wage Claims statute]" and providing that a claimant must first proceed through the Indiana commissioner of labor, who has the duty to investigate a claim and enforce compliance on behalf of the claimant); *see also Treat*, 646 F.3d at 488-90 ("[A]lthough the ultimate remedy under either statute is the same, a claimant under the [Wage Claims statute] must proceed through the Indiana commissioner of labor, who has the duty of investigating a claim and instituting an action on behalf of a claimant, whereas the [Wage Payment statute] permits a claimant to bring his or her own claim in 'any court having jurisdiction.'" (quoting Ind. Code § 22-2-5-2)).

In resolving the parties' arguments over applicability, this Court need not engage in any guesswork on how the Indiana Supreme Court would proceed. It is now well settled under Indiana law that the statutes are mutually exclusive and dependent on the plaintiff's employment status at the time the claim is filed. *Steele*, 766 N.E.2d at 705; *Treat*, 646 F.3d at 489-92; *see also Bishop v. Drees Premier Homes, Inc.*, 2017 WL 4155216, at *4-5 (S.D. Ind. Sept. 19, 2017); *Hollis v. Defender Security Co.*, 941 N.E.2d 536, 540 (Ind. Ct. App. 2011), *trans. denied*, 950 N.E.2d 1212 (Ind. 2011); *Gavin v. Calcars AB, Inc.*, 938 N.E.2d 1270, 1271 (Ind. Ct. App. 2010), *trans. denied*, 950 N.E.2d 1212 (Ind. 2011). When an employee has been involuntarily terminated, he must bring

a wage dispute under the Wage Claims statute. *Treat*, 646 F.3d at 489-92 (analyzing Indiana cases holding that involuntarily terminated employees could not proceed under the Wage Payment statute).

Here, Mr. Baker was involuntarily terminated and therefore must bring all of his wage disputes under the Wage Claims statute. The Wage Payment statute is not applicable in light of his involuntary termination. *See Treat*, 646 F.3d at 489-92; *Steele*, 766 N.E.2d at 705. In *Treat*, the Seventh Circuit acknowledged that the Indiana Supreme Court's guidance on the statutes' applicability in *Steele* was *dicta* but nevertheless found that it was still "a clear indication of the Indiana Supreme Court's view," and noted that the Indiana Supreme Court had denied review of Indiana Court of Appeals cases that relied on *Steele* to hold that involuntarily terminated employees could not state a claim under the Wage Payment statute. *Treat*, 646 F.3d at 489-92 (citing *Hollis*, 941 N.E.2d at 540, *trans. denied*, 950 N.E.2d 1212 (Ind. 2011); *Gavin*, 938 N.E.2d at 1271, *trans. denied*, 950 N.E.2d 1212 (Ind. 2011)). The Seventh Circuit held that its "best prediction" was that the Indiana Supreme Court would find, consistent with *Steele* and the Indiana Court of Appeals cases, that involuntarily terminated employees had to proceed under the Wage Claims statute and could not state a claim under the Wage Payment statute. *Treat*, 646 F.3d at 492.

For the same reasons, this Court reaches the same conclusion. Considering *Steele*, the Indiana Supreme Court's decisions to deny review of the Indiana Court of Appeals cases discussing this issue, and the Seventh Circuit's well-reasoned prediction of the Indiana Supreme Court's analysis, Mr. Baker must proceed under the Wage Claims statute since he was involuntarily

terminated.   The Court **GRANTS IN PART** DWD's Motion to Dismiss to the extent it **DISMISSES** Mr. Baker's Wage Payment claim.[1]

### IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART** DWD's partial Motion to Dismiss, [46], to the extent that it declines to dismiss Mr. Baker's Indiana claims based on preemption, but **GRANTS IN PART** DWD's partial Motion to Dismiss, [46], to the extent it **DISMISSES** Mr. Baker's Wage Payment claim under Indiana Code § 22-2-5, *et seq.* **WITH PREJUDICE**.[2]  The Court cautions Mr. Baker that taking a position contrary to that which he asserted in opposition to DWD's preemption argument going forward will affect preemption of his remaining state law claim.  No partial final judgment shall issue.

Date: 4/17/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**

---

[1] Plaintiff's counsel here was the plaintiff's counsel in *Treat*, 646 F.3d 487, and submitted the same argument in *Imel v. DC Constr. Servs., Inc.*, 2022 WL 293723 (S.D. Ind. Feb. 1, 2022), where the court reached the same result as *Treat*.  The Court cautions Plaintiff's counsel that while Defendant has not sought fees and the Court is disinclined to impose them on its own, Plaintiff's argument disregards settled law and has protracted this litigation—perhaps unreasonably. *See* 28 U.S.C § 1927.  Moreover, a United States district court is a wholly improper forum for attempting to overturn an interpretation of state law as set forth by the Indiana appellate courts.

[2] Dismissal of the Wage Payment claim with prejudice is appropriate because Mr. Baker cannot cure the deficiency the Court has identified.  *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where . . . the amendment would be futile.").